**FIREMEN'S INS. CO. OF NEWARK, N. J.**
**v. SMITH et al.**
No. 14045.

United States Court of Appeals
Eighth Circuit.
Feb. 28, 1950.

Rehearing Denied March 23, 1950.

Writ of Certiorari Denied June 5, 1950.
See 70 S.Ct. 1028.

Ronald S. Reed, St. Joseph, Mo. (Clausen, Hirsh & Miller, Chicago, Ill., on the briefs), for appellant.

Lewis F. Randolph, St. Joseph, Mo. (Stanley I. Dale, St. Joseph, Mo., on the brief), for appellees.

Before SANBORN, THOMAS and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment for the defendants in a proceeding for a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C.A. § 2201, c. 139, § 111, 63 Stat. 105. Jurisdiction is predicated upon diversity of citizenship and the requisite amount involved. The opinion of the court is set out in D.C., 83 F.Supp. 668.

On March 11, 1947, plaintiff insurance company issued to defendants Smith its policy of fire insurance, agreeing to indemnify them for a period of one year in the amount of $5,000, subject to the provisions of the policy, against loss and damage by fire to a building situated just outside the corporate limits of the city of St. Joseph, Missouri.

The insured building was destroyed by fire on April 7, 1947, and on June 2, 1947, defendants delivered verified proof of loss to plaintiff, claiming a total loss.

Plaintiff in this proceeding instituted December 8, 1948, sought a judgment declaring that it was not liable to defendants and asking that the policy be cancelled and declared null and void, and for other relief. Defendants answered asking that plaintiff be declared liable for the loss and asking that they have judgment on the policy and for damages for vexatious delay and an attorney's fee and costs.

Neither party having requested a jury, the court at its own instance called an advisory jury. At the close of the evidence the court, having instructed the jury, submitted to them three special interrogatories which with the jury's answers thereto are as follows:

1. Do you find from the evidence that the use of the insured premises for gambling and the illegal sale of intoxicating liquor or either of them, increased the hazards of destruction by fire of the insured premises?

Answer: No.

2. Do you find from the evidence that C. M. White, the agent of the company, personally inspected the premises prior to the issuance of the policy of insurance sued on?

Answer: Yes.

3. If your answer to the last interrogatory be "Yes" was there present on the premises at the time of such inspection, evidence of gambling and the illegal sales of liquor, or either of them, which were obvious or apparent to the said White?

Answer: Yes.

The court then made findings of fact and conclusions of law and entered judgment in favor of defendants and against plaintiff. The motion of plaintiff for a new trial was overruled, and this appeal followed.

The contentions of appellant are: 1. That the court erred in calling a jury in an advisory capacity; 2. That the policy was void (a) because of false and fraudulent representations by appellees before the policy was issued, (b) because of false swearing by appellees in their proof of loss and in their depositions (c) in that the hazard insured against was increased by means within the control or knowledge of the insured, (d) because of breach of warranty in respect of the use of the premises, and (e) in that it did not waive any of the conditions of the policy; and 3. That the court erred in allowing damages against appellant for vexatious delay and an attorney's fee.

Appellant first contends that "the court erred in calling a jury in an advisory capacity over the appellant's objections and submitting interrogatories to it, for the reason that it was mandatory upon the trial court to try and decide the issues without the aid or advice of a jury, the parties having waived the right to trial by jury and having made no motion for same."

We find no place in the record where counsel for appellant objected to the calling of a jury. In the opinion of the court is the statement that "Neither the plaintiff nor the defendants requested a jury. * * *

Prior to the time the case was called for trial, the court advised the parties that the court would, of its own motion, call a jury to try and determine such disputed facts as might arise during the trial."

The record shows that a jury was examined on their voir dire and duly selected and sworn, after which counsel for each party made opening statements to the jury. At the close of the evidence counsel for appellant requested separate instructions upon the issues; but made no objections to trial to the jury. Again, after the court had instructed the jury, counsel for appellant took exceptions to certain instructions given and to the failure of the court to give all the instructions requested by him.

While the verdict of the jury is limited to answers to the three interrogatories, supra, the court's findings of fact and conclusions of law covered every issue in the case.

■ There can be no doubt that the parties to a declaratory judgment proceeding presenting legal issues are entitled to a trial by jury as of right, Rule 38(a), when demanded as provided in Rule 38 (b, c). Federal Rules of Civil Procedure, 28 U.S.C.A. Unless demanded they are presumed to have waived the right, but the court may upon motion of either party order a jury trial of any or of all issues, but the court may not order a trial by jury on its own initiative. 3 Moore, Federal Practice, 3030, § 39.03.

■ If the issues are purely equitable the court has the right to call a jury in an advisory capacity and to submit such issues of fact as he may elect. Or, with the consent of the parties, the court may order a trial by jury, and the verdict will have the same effect as if trial by jury had been a matter of right.

If the issues are both legal and equitable, the court, by the same procedure, may submit to the jury both legal and equitable issues. In any case the consideration to be given to the verdict depends upon whether the issues are legal or equitable. Hargrove v. American Cent. Ins. Co., 10 Cir., 125 F.2d 225; (American) Lumbermens Mut. Cas-

ualty Co. v. Timms & Howard, Inc., 2 Cir., 108 F.2d 497, and cases cited.

Since appellant asked that the policy be cancelled the issue tendered by the complaint was equitable; and since appellees asked that appellant be declared liable for damages the issue tendered by them was legal in its nature.

One of the grounds on which appellant demanded that the policy be cancelled was that the use of the insured premises for a gambling establishment and a place for the illegal sale of intoxicating liquor increased the fire hazard. The first interrogatory propounded to the jury related to this issue and was, therefore, advisory only.

One of the defenses alleged in the answer was that appellant's agent White had inspected the insured premises before the policy was issued and at the time of such inspection evidence of the use of the premises for gambling and the illegal sales of liquor was obvious and apparent to White; and appellees contend that appellant thereby waived any defense which it might otherwise have to such use of the premises. The second and third interrogatories submitted to the jury related to this issue of fact pleaded as a defense.

■ It follows that the court did not err in calling an advisory jury. It also follows that appellant cannot be heard to complain because it in effect agreed to trial by an advisory jury in that it saved no objection to the jury, but acquiesced in the procedure. See the Hargrove and Lumbermens cases, supra, and the cases cited therein.

■ It is elementary that a court of equity, in the exercise of its powers, may, having jurisdiction over the cause, determine all matters at issue and make a final decree granting full relief to the parties. Alexander v. Hillman, 296 U.S. 222, 242, 56 S.Ct. 204, 80 L.Ed. 192; Cathcart v. Robinson, 5 Pet. 264, 277, 30 U.S. 264, 8 L.Ed. 120; McGowan v. Parish, 237 U.S. 285, 35 S.Ct. 543, 59 L.Ed. 955; Banco Commercial De Puerto Rico v. Boscana, 1 Cir., 100 F.2d 449, 452; McComb v. Frank Scerbo & Sons, Inc., D.C. N.Y., 80 F.Supp. 457, 458.

Further, it should be noted that the appeal here is not from the verdict of the jury but from the judgment entered by the court, and the judgment is supported by complete findings of fact on every issue. The important question for consideration on this appeal is whether the findings are supported by substantial evidence.

The policy of insurance provides:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein or in case of any false swearing by the insured relating thereto.

\* \* \* \* \* \*

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss [occurring]

"(a) while the hazard is increased by any means within the control or knowledge of the insured; or \* \* \*."

■ The court made separate findings of fact on each of these points and found against appellant. The findings are supported by substantial evidence. The elements of a fraudulent representation under Missouri law are (1) its falsity, (2) its materiality, (3) knowledge of its falsity or ignorance of its truth on the part of the person making the representation, (4) intent that it should be acted upon, (5) ignorance of its falsity on the part of the person to whom the representation was made, (6) his reliance on its truth, (7) his right to rely thereon, and (8) his consequent and proximate injury. Maupin v. Provident Life & Accident Ins. Co., Mo.App., 75 S.W.2d 593, 596. Where the evidence is in conflict the question of fraudulent representation is for the jury, if tried to a jury, or for the trial court, if tried to the court without a jury. Maupin v. Provident Life & Accident Ins. Co., supra; Williams v. Connecticut Fire Ins. Co., Mo.App., 47 S.W.2d 207. Where a fire policy does not promote or encourage a violation of law, a mere illegal use of the premises not expressly prohibited by the

terms of the policy and not causing or contributing to the cause of the fire does not necessarily bar recovery. Boston Ins. Co. v. Read, 10 Cir., 166 F.2d 551, 2 A.L.R. 2d 1155. In the instant case the court and the jury each found upon substantial evidence that the appellant's agent White learned when he inspected the premises before the policy was issued that they were being used for gambling purposes; and the court and the jury found, also, that the gambling and sale of liquor did not increase the hazards of destruction by fire. Clearly the representation as to use of the premises, even if false and made by the appellees, did not relate to any "material circumstance."

Appellant next contends that the policy was void because of false swearing by the insured in the proof of loss and in depositions. This depends also upon whether the alleged false swearing by the insured related to any material fact or circumstance concerning the insurance or the subject thereof. The contention refers again to the statement in the proof of loss that the premises were used only for a restaurant and a residence, and, also, to the denial in the answer that the fire which destroyed the property was of incendiary origin. The contention that the insured swore falsely as to the use of the premises is immaterial. In this connection, see McGee et al. v. Capital Mut. Ass'n of Jefferson City, Mo.App., 116 S.W. 2d 204. As to the origin of the fire, appellant claimed that there was evidence warranting an inference that the fire was of incendiary origin. The evidence referred to is that the garage door was found partly open and that there was a passage open from the garage to the basement of the building where the fire started. But the First Assistant Fire Chief of the City of St. Joseph who arrived at the premises while the fire was raging and inspected the place testified that he found no evidence of any incendiarism about the fire. The finding of the court that "there was no proof of any kind or character showing the origin of the fire" is therefore conclusive.

Appellant's next contention is that although the insured premises were actually used as a residence and as a restaurant, the fact that gambling and the illegal sale of intoxicating liquor were carried on at the premises increased the fire hazard and relieved appellant of liability on its policy. A further contention is that the question whether or not gambling and selling liquor on the insured premises increased the fire hazard was a question of law for the court and not for the jury. The policy is not set out in the record, and no specific provision thereof against gambling or the illegal sale of liquor on the premises is called to our attention. In the absence of a specific warranty that the premises would not be so used, the question whether such use actually increased the hazard was one of fact for the court or the jury. St. Paul Fire & Marine Insurance Co. v. Bachman, 285 U.S. 112, 52 S.Ct. 270, 76 L.Ed. 648. The question was properly submitted to the jury and its negative answer was advisory to the court. The court's finding is supported also by substantial evidence and is therefore conclusive.

In the case of Security Ins. Co. of New Haven v. Dazey, 7 Cir., 78 F.2d 537, the company in an action on a policy issued by it alleged that the insured had violated a provision of the policy which specified that it should be void if the hazard be increased within the control or knowledge of the insured in that the insured permitted divers persons to congregate in the insured building for the purpose of unlawfully gaming therein whereby the hazard was increased. The court sustained a demurrer to the plea and the Court of Appeals affirmed on the ground that it was not pointed out in what manner the playing of such games increased the hazard. The same defect exists in the pleadings in the present case, and the defect is not cured by any evidence.

A further contention is that the provision of the policy that the insured property was to be occupied as a restaurant and dwelling was a promissory warranty that it would be so used, and that the further and additional use of the premises for gambling

and the illegal sale of liquor constituted a breach of the warranty which voided the policy.

Section 5935, R.S.Mo.1939, Mo.R.S.A., provides that "The warranty of any fact or condition hereafter incorporated in or made a part of any fire * * * policy of insurance, purporting to be made or assented to by the assured *which shall not materially affect the risk insured against,* shall be deemed, taken and construed as representations only in all suits at law or in equity brought upon such policy in any of the courts of this state." (Emphasis supplied.)

It has been shown above that the court and the jury found that the "risk insured against" was not materially affected by the presence on the premises of gambling and the sale thereon of intoxicating liquor. Appellant relies upon Packard Mfg. Co. v. Indiana Lumbermens Mut. Ins. Co., 356 Mo. 687, 203 S.W.2d 415. That case, however, is not in point. The policy there covered fire hazard on " * * * stock while contained in buildings" occupied by the insured in St. Louis, Missouri. That policy contained the specific provision: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if * * * there be kept, used or allowed on the above described premises, benzine * * * gasoline * * or other explosives * * *." A fire occurred and in a suit to recover on the policy, the court said: "There is no dispute about 11 gallons of gasoline in two 5-gallon and one 1-gallon containers being in the building for five or six weeks before the fire and remaining there after the fire." The Supreme Court of Missouri held, two judges dissenting, that the provisions of the policy quoted were a warranty and that the policy was void by its own terms; and that the court was without authority to rewrite the contract for the parties. Such is not the situation here. The policy in the instant case contains no such specific provisions.

Appellant contends that it waived none of the conditions of the policy above discussed, and that waiver not having been pleaded it is not available to appellees. We have discussed above the conditions claimed to have been violated by appellees and have shown that each of the alleged violations of the conditions referred to was not in fact a violation because it referred to an immaterial matter.

This contention has reference to the following allegation in appellees' answer and to the findings of the court and of the jury. The answer alleges: "11. For further answer, defendants say that no representations were made by them in connection with the procuring of the policy of insurance set forth in plaintiff's complaint; said policy was procured by an officer of the Mechanics Bank of St. Joseph, Missouri, which bank at the time had a mortgage indebtedness on the property insured in plaintiff's policy; and the agent for plaintiff's company who sold and issued the policy in suit, came to defendants' premises and made inspection thereof before the policy of insurance was issued, and said agent had full knowledge of the nature and character of defendants' premises, and the business that was carried on at said premises."

The evidence is to the effect that the bank procured the policy through appellant's agent White. No written application was made for the policy and no representations were made by appellees to White in regard to the use of the insured premises prior to the issuance of the policy. White denied that he visited the premises before the policy was issued. Both appellees and two other witnesses testified that White did inspect the premises, going into every room in the building, and particularly into the room where the gambling devices were in plain view and into the bar where the liquor was sold. The court found: "15. In accordance with the finding of the jury, the court finds that the use of the property by the defendants for purposes other than a restaurant and a dwelling did not increase the hazard of destruction of the premises by fire; that prior to the issuance of the policy the agent of plaintiff inspected the premises and knew that the same were being used for gambling and the sale of intoxicating liquor." And the court con-

cluded as a matter of law "that the knowledge of the agent of the plaintiff as to the use of said property prior to the issuance of the policy, waived the provision of the policy with respect to the use thereof."

It does not matter whether such defense is called waiver, estoppel, or by no technical name, because the applicable rule in Missouri is that "where the duly authorized agent or representative of an insurance company, acting within the scope of his authority, has personal knowledge of the true facts regarding which inquiry is made of the applicant at the time of the taking of his application, then the policy which is issued in response to such application may not be thereafter voided by the company even though false statements and representations do appear therein. This, of course, upon the theory that the knowledge of the agent is equally the knowledge of the principal whom he represents". McGee v. Capital Mut. Ass'n of Jefferson City, supra [116 S.W.2d 205]; Gordon v. Royal Neighbors of America, Mo.App., 90 S.W.2d 198, 203. An exception to this rule is that knowledge of the agent is not to be imputed to his principal where there is fraud and collusion between the agent and the applicant. No evidence in the record in any way suggests fraud and collusion between White, the agent, and appellees or the bank which procured the insurance. The evidence for the appellees is that an officer of the bank which had a mortgage on the insured property had in his possession all the policies of insurance on the property and that such officer exhibited all of the policies to White and informed him that new policies containing the same provisions as the old ones were desired. No written application was made. No fraud or collusion between White and the officer of the bank can be presumed from such a situation. McGee v. Capital Mut. Ass'n of Jefferson City, supra. The finding of the court on this contention is supported by substantial evidence. Compare Columbia Planing Mill Company v. American Fire Ins. Co. of New York, 59 Mo.App. 204; Ward v. Iowa State Ins. Co., Mo.App., 4 S.W.2d 895;

Scarritt Estate Co. v. Casualty Co. of America, 166 Mo.App. 567, 149 S.W. 1049.

Finally, appellant contends that the court erred in allowing damages and attorney's fees for vexatious delay.

The fire which destroyed the insured building occurred April 7, 1947. The action for declaratory judgment was not filed until December 8, 1948. Appellees then brought an action on the policy in the state court of Missouri which was removed by appellant here to the federal court, and on March 16, 1949, an amended complaint was filed. The case was tried on the amended complaint and the answer. The court held that the evidence failed to support appellant's contentions and found specifically " * * * that the plaintiff vexatiously refused to pay the amount due under said policy, and that defendants are entitled to ten per cent penalty for such vexatious refusal to pay."

Section 6040, R.S. Mo. 1939, Mo. R.S.A., provides: "In any action against an insurance company to recover the amount of any loss under a policy of * * * insurance, if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten per cent on the amount of the loss and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict."

The application and enforcement of this statute have been before the Missouri courts and the Federal courts many times. This court reviewed the rules established by many of the decisions of the Missouri courts in Western Fire Ins. Co. v. University City, 8 Cir., 124 F.2d 698. It was there pointed out that under the statute an insurance company must be allowed to entertain an honest difference of opinion as to its liability under the contract of insurance and to litigate that difference, citing Non-Royalty Shoe Co. v. Phoenix Assur. Co., 277 Mo. 399, 210 S.W. 37. The fact that the judgment may be adverse to the insurer is not conclusive. Where law-

yers might reasonably differ as to the issue, the question of vexatious delay ought not to be submitted to the jury. State ex rel. Gott v. Fidelity & Deposit Co., 317 Mo. 1078, 298 S.W. 83. The Missouri courts have also held that the jury may find that the insurer's refusal to pay was vexatious from its failure to establish the grounds on which the refusal was based. No explanation is offered or suggested why appellant delayed bringing this declaratory judgment proceeding until December 8, 1948, when the fire had occurred on April 7, 1947. The trial court in considering this question said: "If the insurer felt secure in its position regarding possible incendiarism, which controversy must have arisen within a comparatively short time after the loss occurred and investigation made, it certainly did not show confidence in its claim by deferring any action to avoid the policies for a period of approximately nineteen months."

Failure of appellant to establish any of its alleged bases for cancelling the policy, and because of its long delay the court held that appellees were entitled to recover for vexatious refusal to pay and for an attorney's fee, citing Buffalo Ins. Co. of City of Buffalo v. Bommarito, 8 Cir., 42 F.2d 53, 57, 70 A.L.R. 1211. In this case proof of loss was rendered to appellant on June 2, 1947, but this suit was not instituted for approximately 19 months thereafter, on December 8, 1948. As said in Buffalo Ins. Co. of City of Buffalo v. Bommarito, supra, "* * * a refusal to pay is vexatious if founded not upon what appear to be facts but only on a possibility that later investigation may develop facts justifying refusal to pay, even if such further investigation does develop such facts. The facts as developed may defeat recovery altogether, and if so, of course, they will incidentally defeat recovery of damages for vexatious refusal to pay; * * *." The circumstances in evidence are such that the decision of the court upon this issue must be sustained.

We find no reversible error in the record. The judgment appealed from is therefore affirmed.